RECEIVED

JUDGE DAVID GUADERRAMA

SEP 2 8 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | |
| **Plaintiff,** | **Case No:** |
| **v.** | |
| **ABNER ALEJANDRO TINOCO, and KIKIT & MESS INVESTMENTS, LLC,** | **Hon. _____** |
| **Defendants.** | **EP21CV0237** |

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY
PENALTIES, AND OTHER EQUITABLE RELIEF**

The Commodity Futures Trading Commission ("CFTC" or "Commission"), an

independent federal agency, by and through its attorneys hereby alleges as follows:

## I.   INTRODUCTION

1.    Between at least September, 2020 and continuing through the present ("Relevant

Period"), Defendants Abner Alejandro Tinoco ("Tinoco"), and his Texas company, Kikit &

Mess Investments, LLC ("Kikit") (collectively, "Defendants"), have engaged in an ongoing

scheme in which they have already defrauded over 61 clients, many of whom reside in Texas and

the Southwest region of the United States and Mexico, out of at least $3.9 million.  Specifically,

Defendants have fraudulently solicited and accepted money from clients for the purpose of

managing their funds in "customized client portfolios" to trade in foreign exchange markets and

cryptocurrencies.  In reality, however, Defendants did not trade their clients' funds in managed

accounts; instead, they misappropriated the funds for Tinoco's personal benefit or to pay bogus

"profits" that they had falsely reported to clients, in a manner akin to a Ponzi scheme.

2.     By engaging in this conduct and the conduct further described herein, the Defendants have violated certain anti-fraud provisions of the Commodity Exchange Act ("Act" or "CEA"), 7 U.S.C. §§ 1-26 (2018) namely, Sections 4b(a)(1)(A) and (C), 4b(a)(2)(A) and (C), 4o(1), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C), 6b(a)(2)(A), (C), 6o(1), 9(1) (2018), and Commission Regulations ("Regulations") 5.2(b) and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b), 180.1(a)(1)-(3) (2020).

3.     Unless restrained and enjoined by this Court, Defendants are likely to continue engaging in the acts and practices alleged in this Complaint.

4.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the CFTC brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act.  The CFTC also seeks civil monetary penalties and remedial ancillary relief, including restitution to defrauded clients, disgorgement, pre- and post-judgment interest, and such other equitable relief as this Court may deem necessary and appropriate.

## II.     JURISDICTION AND VENUE

5.     **Jurisdiction**.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), provides that U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive and other relief or to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

2

6.    **Venue.** Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2018), because the Defendants transacted business in this District, and certain of the acts and practices in violation of the Act have occurred, are occurring, or are about to occur within this District, among other places.

### III.    PARTIES

7.    Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, 7 U.S.C. §§ 1-26 (2018), and Regulations, 17 C.F.R. pts. 1-190 (2020).

8.    Defendant **Abner Alejandro Tinoco** is a resident of El Paso, Texas, and has never been registered with the CFTC in any capacity.

9.    Defendant **Kikit & Mess Investments, LLC** is a Texas limited liability corporation, formed in September 2020 with its office in El Paso, Texas. Tinoco is the Managing Member of Kikit, which has never been registered with the CFTC in any capacity.

### IV.    STATUTORY BACKGROUND

#### A. Definitions

10.    Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2018), defines a CTA, in relevant part, as any person who for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as the value of or advisability of trading in: (I) any contract of sale of a commodity for future delivery, security futures product, or swap; or (II) any agreement, contract, or transactions in foreign currency as described in Section 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(C)(i) (2018). In addition, a CTA for purposes of forex transactions, is defined by Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2020), as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any

3

person that is not an eligible contract participant [("ECP")] as defined in Section 1a(18) of the Act, in connection with retail forex transactions."

11.     An ECP is defined by Section 1a(18)(A)(v)(I) and (xi) of the Act, 7 U.S.C. § 1a(18)(A)(v)(I), (xi) (2018), in relevant part, as: a corporation, partnership, proprietorship, organization, trust, or other entity that has total assets exceeding $10 million; or an individual who has invested on a discretionary basis, the aggregate of which is in excess of (a) $10 million, or (b) $5 million and who enters the transaction "to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."

12.     Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2020), defines a "retail forex transaction" as any off-exchange agreement, contract or transaction in foreign currency offered to, or entered into with, non-ECPs, as described in Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018). In common parlance, forex or foreign exchange markets typically refers to Section 2(c)(2)(C) transactions that are leveraged, margined, or financed.

13.     Section 2(c)(2)(C) of the Act delineates the Commission's jurisdiction over agreements, contracts and transactions in forex. In relevant part, 7 U.S.C. § 2(c)(2)(C)(vii) provides that the Commission shall have jurisdiction over an account that is offered for the purpose of trading, or that trades, any agreement, contract, or transaction in foreign currency described in clause 2(c)(2)(C)(i). In addition, 7 U.S.C. § 2(c)(2)(C)(i)(I), in relevant part, applies to any agreement, contract or transaction in foreign currency that is offered to, or entered into with, a person that is not an ECP, unless the counterparty, or the person offering to be the counterparty, of the person that is not an ECP falls under one of the enumerated exceptions not applicable here.

4

14.     Digital assets such as Bitcoin are encompassed in the definition of "commodity" under Section la(9) of the Act, 7 U.S.C. § la(9) (2018).  In common parlance, cryptocurrency typically refers to digital assets.

### B. Derivative Liability Under the Act

15.     Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), provides that any person who, directly or indirectly, controls any person who has violated the Act, or regulations promulgated thereunder, may be held liable for such violations to the same extent as the controlled person if the controlling person did not act in good faith or knowingly induced, directly or indirectly, the acts constituting the violation.

16.     Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2020), provide that the act, omission, or failure of any official, agent, or other person acting for any . . . corporation . . . within the scope of his employment or office, shall be deemed the act, omission, or failure of such . . . corporation . . . , as well as such official, agent, or other person."

## V.     FACTS

17.     In September 2020, Tinoco, formed Kikit, a Texas LLC, as an investment firm and designated himself as its Managing Member .

18.     In October 2020, Tinoco launched a website at www.kikitnmessinv.com.  The website describes Kikit ("About Us") as an investment firm:

> Kikit & Mess Investments is a El Paso based investment firm that offers customized client portfolios in the cryptocurrency and foreign exchange markets. Operating in downtown El Paso, our experienced traders, account executives and customer service representatives serve clients throughout the Borderland, Southwest and into Mexico to give our clients access to top portfolios available in cryptocurrency. With a wealth of knowledge in the industry, we strive to educate our clients about the opportunities they have with us and provide them the security, trust and proven growth to build lasting relationships.

19.     The Kikit website FAQ section functionally describes Kikit ("What do you do?")

as commodity trading advisor ("CTA") that manages individual client accounts:

> We specialize in managing investment accounts based in the cryptocurrency and
> foreign exchange market. We offer customized investment plans tailored to our
> client's investment needs so that they can experience financial freedom while not
> having to waste their time trading.

20.     The Kikit website further explains that Kikit offers ("We Offer") individualized

trading advice:

> Tailored portfolio strategies based on your individual risk tolerance. Our
> investment professionals can align your investment strategy for proper
> diversification to grow and protect your wealth.

21.     In addition, as part of its client solicitations, the Kikit website offers the

testimonial of a purportedly satisfied client:

> "I studied Finance at UTEP but never did any trading or investments in the stock
> market. After watching how Kikit & Mess Investments operates in Forex, I
> immediately contacted them to learn more. I started with a 90 day investment and
> saw a profit in 2 weeks so I decided to extend my investment. I couldn't be
> happier with investing with Kikit and Mess." — Ruben

22.     By referring to foreign exchange markets and forex and by marketing to retail

(non-ECP) clients, Defendants invoked a commonly understood term that encompasses

leveraged, margined, or financed retail forex transactions.  Similarly, by referring to

cryptocurrency, Defendants invoked a commonly understood term for digital assets, the most

widely recognized of which is Bitcoin, which is traded on a regulated designated contract market

("DCM").

23.     Also, in October 2020, Tinoco opened a business bank account for Kikit and

immediately began to receive deposits into that account from individual clients, with their

trading funds coming via checks, wires and Zelle transfers.  Tinoco was the sole signatory on the

Kikit bank account.

24.     During the Relevant Period, Tinoco deposited more than $3.9 million into Kikit's bank account, most if not all of those funds coming from at least 61 individual clients.  On information and belief, neither Kikit nor Tinoco nor any of the individual clients were ECPs.

25.     Defendants did not use clients' funds to trade forex or cryptocurrency, or any other trading in managed accounts as promised on its website.  Defendants used the vast majority of funds from clients to pay for Tinoco's personal expenses such as travel costs for the chartering of a private jet, luxury mansion, and car rentals, and, in recent months, the purchase or lease of a luxury automobile and real estate in the El Paso area.

26.     Defendants also used some of the deposited client funds to pay bogus "investment profits" to other clients in a manner akin to a Ponzi scheme

27.     Defendants advised clients that they could access their portfolios via Kikit's online platform, where they could see their accounts.

28.     Kikit did not have a commodity trading account at any registered futures commission merchant ("FCM") or forex trading account at any retail foreign exchange dealer ("RFED").  Further, although Tinoco opened a trading account in his own name at an FCM prior to the Relevant Period, depositing a mere $10 and executing negligible trades of foreign currency pairs on leverage, he conducted no trading during the Relevant Period in that account.  During the Relevant Period, Kikit had on their payroll an employee ("Employee 1") who was never registered in any capacity with the CFTC.  Employee 1 promoted himself as a "broker" for Kikit on his LinkedIn page, while Kikit's Facebook page described him as Kikit's "co-founder."  Kikit funded a trading account at an FCM for Employee 1 during the Relevant Period which was minimally funded and did very little trading.

7

29.     During the Relevant Period, the Defendants misappropriated at least $3.9 million in client funds.  Kikit's bank account had a balance exceeding $2 million in July 2021; however, after the bank notified the Defendants in mid-August that they would be closing the account, the Defendants withdrew $644,489.46 on September 1, 2021, and exhausted the remaining balance thereafter resulting in a negative balance on September 7, 20201.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

**Violations of Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(1)(A), (C) (2018): Fraud in Connection with Commodities Transactions by Misappropriation, Misrepresentations and Material Omissions**

30.     Paragraphs 1 through 29 are re-alleged and incorporated herein by reference.

31.     The Act at 7 U.S.C. § 6b(a)(1)(A), (C), in relevant part, makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person:  (A) to cheat or defraud or attempt to cheat or defraud such other person; or (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for such other person.

32.     Defendants violated 7 U.S.C. § 6b(a)(1)(A), (C) during the Relevant Period by, among other things:  (1) falsely telling clients that their funds were being used to trade in managed cryptocurrency accounts (commodities in interstate commerce); and (2) misappropriating client funds for Tinoco's personal benefit, including paying travel costs for the chartering of a private jet, luxury mansion and car rentals, and, in recent months, for the

8

purchase or lease of a luxury automobile and real estate in the El Paso area, and also to pay false profits to other clients, in the manner of a Ponzi scheme.

33.     Defendants committed the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

34.     Tinoco is a controlling person of Kikit and has failed to act in good faith, or has knowingly induced, directly or indirectly, the acts of Kikit constituting the violations set forth in Count I. Accordingly, Tinoco is liable for each and every violation of the Act committed by Kikit, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018).

35.     Kikit is liable as a principal for the acts, omissions, or failures of Tinoco, and any other agents, employees, or persons otherwise acting for them set forth in Count I, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2020).

36.     Each act of misappropriation, misrepresentation or omission of material facts, made during the Relevant Period, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A), (C).

## COUNT II

**Violations of Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2018), and Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2020)**
**Fraud in Connection with Forex Transactions by Misappropriation, Misrepresentations and Material Omissions**

37.     Paragraphs 1 through 36 are re-alleged and incorporated herein by reference.

38.     The Act at 7 U.S.C. § 6b(a)(2)(A), (C) makes it unlawful "for any person, in or in connection with any order to make, or the making of, any contract for sale of any commodity for future delivery . . . that is made, or to be made, for or on behalf of, or with any other person, other than on or subject to the rules of a designated contract market:  (A) to cheat or defraud or

attempt to cheat or defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to an order or contract for or, in the case of paragraph (2), with the other person."

39.     Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) 2018), among other things, contains three grants which make clear that the CFTC has jurisdiction over, and that certain antifraud provisions in the Act apply to, retail forex:

      a.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(ii)(I), forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "shall be subject to" the antifraud provisions of 7 U.S.C. §§ 6b and 6o, among other Sections of the Act;

      b.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(iv), 7 U.S.C. § 6b "shall apply to" the forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i) "as if" they were a contract of sale of a commodity for future delivery; and

      c.   Pursuant to 7 U.S.C. § 2(c)(2)(C)(vii), "[t]his Act applies to, and the Commission shall have jurisdiction over an account . . . that is offered for the purpose of trading, or that trades," forex agreements, contracts, or transactions described in 7 U.S.C. § 2(c)(2)(C)(i).

40.     The foreign currency transactions offered by Defendants are retail forex transactions pursuant to Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2020).  Regulation 5.2(b)(1) and (3), 17 C.F.R. § 5.2(b)(1), (3) (2020), makes it unlawful "for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction: (1) [t]o cheat or defraud or attempt to cheat or

defraud any person; or (3) [w]illfully to deceive or attempt to deceive any person by any means whatsoever."

41.     Defendants violated 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R. § 5.2(b) (1), (3), by, among other things:  (1) falsely telling clients that their funds were being used to trade in managed forex accounts; and (2) misappropriating client funds for Tinoco's personal benefit, including paying travel costs for the chartering of a private jet, luxury mansion and car rentals, and, in recent months, for the purchase or lease of a luxury automobile and real estate in the El Paso area, and also using client funds to pay false profits to other clients, in the manner of a Ponzi scheme.

42.     Defendants engaged in such acts by the use of the mails or other means or instrumentality of interstate commerce.

43.     The Defendants committed the acts and practices described herein willfully, knowingly, or with reckless disregard for the truth.

44.     Defendant Tinoco is a controlling person of Kikit and has failed to act in good faith, or has knowingly induced, directly or indirectly, the acts of Kikit constituting the violations set forth in Count II.  Accordingly, Tinoco is liable for each and every violation of the Act committed by Kikit, pursuant to 7 U.S.C. § 13c(b).

45.     Kikit is liable for the acts, omissions, or failures of Tinoco, and any other agents, employees, or persons otherwise acting for them set forth in Count II, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

46.     Each act of misappropriation, misrepresentation or omission of material facts, made during the Relevant Period, including, but not limited to, those specifically alleged herein,

constitutes a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A), (C) and 17 C.F.R.

§ 5.2(b)(1), (3).

## COUNT III

### Violations of Section 4*o*(1)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A), (B) (2018): Fraud by a Commodity Trading Advisor

47.     Paragraphs 1 through 46 are re-alleged and incorporated herein by reference.

48.     Defendant Kikit, through the offer of its managed trading account services, for

compensation or profit, have engaged in the business of advising others, either directly or

through publications , writings, or electronic media, as to the value of or the advisability of

trading in "any agreement, contract, or transaction described in section 2(c)(2)(C)(i)" (foreign

currency).  As such, Defendant Kikit acted as a CTA within the meaning of Section 1a(12) of the

Act, 7 U.S.C. § 1a(12) (2018).  Therefore, pursuant to 7 U.S.C. § 2(c)(2)(C)(ii) and (vii),

Defendant Kikit's retail forex agreements, contracts and transactions and accounts shall be

subject to 7 U.S.C. § 6*o*.

49.     During the Relevant Period, Defendant Kikit violated 7 U.S.C. § 6*o*, in that, while

acting as a CTA, through use of the mails or other means or instrumentality of interstate

commerce such as the internet, electronic mail and electronic trading, Defendant Kikit employed

a device, scheme or artifice to defraud clients and prospective clients and engage in a transaction,

practice or course of business which operates as a fraud upon its client and prospective clients

by, among other things:  (1) falsely telling clients that their funds were being used to trade in

managed forex and cryptocurrency accounts; and (2) misappropriating client funds for Tinoco's

personal benefit, including paying travel costs for the chartering of a private jet, luxury mansion

and car rentals, and, in recent months, for the purchase or lease of a luxury automobile and real

12

estate in the El Paso area, and also using client funds to pay false profits to other clients, in the manner of a Ponzi scheme.

50.     Defendant Tinoco is a controlling person of Kikit and has failed to act in good faith, or has knowingly induced, directly or indirectly, the acts of Kikit constituting the violations set forth in Count III.  Accordingly, Tinoco is liable for each and every violation of the Act committed by Kikit, pursuant to 7 U.S.C. § 13(b).

51.     Kikit is liable for the acts, omissions, or failures of Tinoco, and any other agents, employees, or persons otherwise acting for them set forth in Count III, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

52.     Each act of misappropriation, misrepresentation or omission of material facts, made during the Relevant Period, including, but not limited to, those specifically alleged herein, constitutes a separate and distinct violation of 7 U.S.C. § 6o(1)(A), (B).

### COUNT IV

**Violations of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and
Regulation 180.1(a)(1)-(3), 17 C.F.R. § 180.1(a)(1)-(3) (2020):
Fraud**

53.     Paragraphs 1 through 52 are realleged and incorporated herein by reference.

54.     The Act in 7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap or contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, including in contravention of 17 C.F.R. § 180.1(a)(1)-(c).

55.     The Regulations at 17 C.F.R. § 180.1(a) provide, in relevant part, that it shall be unlawful for any person, directly or indirectly, in connection with any contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of

13

any registered entity, to intentionally or recklessly: (1) use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; or (3) engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person.

56.     Defendants, directly or indirectly, in connection with contracts of sale of commodities in interstate commerce, contracts for future delivery on or subject to the rules of a registered entity, intentionally or recklessly:

(a) used or employed, or attempted to use or employ, a scheme or artifice to defraud; including falsely telling clients that their funds were being used to trade in managed forex and cryptocurrency accounts and misappropriating client funds for personal use; (b) made, or attempted to make, untrue or misleading statements of material fact, or omitted to state material facts necessary to make the statements made not untrue or misleading; including falsely telling clients that funds were being used to trade in managed forex and cryptocurrency accounts and misappropriating client funds for personal use; and/or (c) engaged in, or attempted to engage in, acts, practices, or a course of business that operated or would operate as a fraud or deceit on Kikit's clients, including falsely telling clients that funds were being used to trade in managed forex and cryptocurrency accounts and misappropriating client funds for personal use.

57.     As a result of the foregoing conduct, Defendants' fraudulent conduct violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

14

58.     Defendant Tinoco is a controlling person of Kikit and has failed to act in good faith, or has knowingly induced, directly or indirectly, the acts of Kikit constituting the violations set forth in Count IV.  Accordingly, Tinoco is liable for each and every violation of the Act committed by Kikit, pursuant to 7 U.S.C. § 13(b).

59.     Kikit is liable for the acts, omissions, or failures of Tinoco, and any other agents, employees, or persons otherwise acting for them set forth in Count IV, pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2.

60.     Each use or employment or attempted use or employment of any manipulative device, scheme, or artifice to defraud; untrue or misleading statement of fact, omission of material fact necessary to make statements not untrue or misleading; or act of engaging, or attempting to engage, in acts, practices or courses of business that operated or would have operated as a fraud or deceit on Kikit's clients during the Relevant Period is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3).

## VII.   RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers:

A.     Find that the Defendants violated Sections 4b(a)(1)(A) and (C), 4b(a)(2)(A) and (C), 4o(1)(A) and (B), and 6(c)(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C), 6b(a)(2)(A), (C), 6o(1)(A), (B), 9(1) (2018), and Regulations  5.2(b)(1), (3), and 180.1(a)(1)-(3), 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3) (2020);

B.     Enter an order of permanent injunction enjoining Tinoco and Kikit, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from directly or indirectly engaging in the conduct described above, in violation of

7 U.S.C. §§ 6b(a)(1)(A), (C), 6b(a)(2)(A), (C), 6o(1)(A), (B), 9(1), and 17 C.F.R. §§ 5.2(b)(1), (3), 180.1(a)(1)-(3);

       C.     Enter an order of permanent injunction enjoining Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons or entities in active concert with them, who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

        1.     Trading on or subject to the rules of any registered entity (as that term is defined by Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

        2.     Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)) for accounts held in the name of Tinoco or Kikit or for accounts in which Tinoco or Kikit has a direct or indirect interest;

        3.     Having any commodity interests traded on Defendants' behalf;

        4.     Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

        5.     Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

        6.     Applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and

16

       7.      Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9).

    D.     Enter an order directing Tinoco and Kikit, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received, including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment and post-judgment interest;

    E.     Enter an order requiring Tinoco and Kikit, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

    F.     Enter an order directing Tinoco and Kikit, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with, or among Tinoco and Kikit and any of the customers whose funds were received by Tinoco and Kikit as a result of the acts and practices that constituted violations of the Act, as described herein;

    G.     Enter an order directing Tinoco and Kikit to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2020), for each violation of the Act, as described herein;

H.     Enter an order requiring Tinoco and Kikit to pay costs and fees as permitted by

28 U.S.C. §§ 1920 and 2413(a)(2) (2018); and

I.      Enter an order providing such other and further relief as this Court may deem

necessary and appropriate under the circumstances.

Dated:  September 28, 2021                          Respectfully submitted,

                                                             Plaintiff, COMMODITY FUTURES TRADING COMMISSION

                                                                  */s/Susan B. Padove*
                                                                  Susan Padove
                                                                  Senior Trial Attorney
                                                                  spadove@cftc.gov (Padove)

                                                                  David Terrell
                                                                  Chief Trial Attorney
                                                                  dterrell@cftc.gov (Terrell)

                                                                  Scott Williamson
                                                                  Deputy Regional Counsel
                                                                  swilliamson@cftc.gov (Williamson)

                                                                  Division of Enforcement
                                                                  Commodity Futures Trading Commission
                                                                  525 W. Monroe St., Suite 1100
                                                                  Chicago, IL 60661
                                                                  (312) 596-0700

                                                                  Phone:  (202) 390-6885 (Padove - cell)
                                                                  Fax:  (312) 596-0714